UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ANIBAL ORSINI, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | 2:16-cr-00140-DBH-1 |
| v. | ) | 2:18-cv-00501-DBH |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Anibal Orsini moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 174.) Following a guilty plea, Petitioner was convicted of conspiracy to distribute more than 100 grams of heroin and a quantity of cocaine hydrochloride and fentanyl; the Court sentenced Petitioner to 188 months in prison. (Judgment, ECF No. 145.) The First Circuit affirmed the sentence. *United States v. Orsini*, 907 F.3d 115 (1st Cir. 2018). In response to the section 2255 motion, the Government moved for dismissal. (Response, ECF No. 178.)

Following a review of the record, and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request to dismiss Petitioner's motion.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 28, 2017, Petitioner plead guilty to knowingly and intentionally conspiring to distribute 100 grams or more of heroin and a quantity of cocaine

hydrochloride and fentanyl, pursuant to 18 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B). (Change of Plea Hearing, ECF No. 98; Judgment at 1).

In May and July 2017, the Revised Presentence Investigation Report (hereinafter PSR) revealed that federal agents had, in 2014 and 2015, identified Petitioner, who was located in Lawrence, Massachusetts, as a supplier of heroin to dealers in Maine. (PSR ¶ 6.) After a series of controlled drug purchases, agents executed arrest and search warrants at Petitioner's residences and a stash house, as well as the residence of Petitioner's co-defendant, seizing fentanyl, cocaine, firearms, and cash. (*Id.* ¶ 10.) The probation officer concluded that Petitioner was accountable for 39.99 kilograms of heroin, 116 kilograms of cocaine, and 1.06 kilograms of fentanyl, yielding a guideline base offense level of 36. (*Id.* ¶¶ 13, 18.) Probation recommended a 2-level increase to the offense level for the involvement of a firearm, a 3-level increase for a managing or supervising role in criminal activity involving five or more participants, and a 3-level reduction for acceptance of responsibility, resulting in a total offense level of 38. (*Id.* ¶¶ 19, 23, 27 – 29.)

According to the PSR, Petitioner's criminal history category was V, which increased to VI because Petitioner qualified as a career offender as a result of three prior controlled substance offenses. (*Id.* ¶¶ 48 – 49.) The resulting guideline sentencing range was 360 to 480 months of imprisonment. (*Id.* ¶ 89.) Petitioner filed a number of objections to the PSR, and argued that his base offense level should be 30 and his criminal history category should be V, but he did not specifically dispute the career offender status. (*Id.* at 27 – 31.) The probation officer wrote that "[a]fter consulting with defense counsel, the Probation Office asserts that the parties agree that this defendant is a career offender." (*Id.* at 27.)

At the October 16, 2017, sentencing hearing, the parties agreed that the Court did not need to resolve disputed factual issues regarding Petitioner's offense level because even without the disputed facts, Petitioner's career offender status established a minimum offense level that produced a guideline range of 188 to 235 months. (Min. Entry for Sentencing Hearing, ECF No. 143; Sentencing Transcript at 4, 9 – 10, 13, ECF No. 162.) The Court sentenced Petitioner to a prison term of 188 months imprisonment, followed by a term of five years of supervised release. (Judgment at 2-3.)

On October 18, 2017, Petitioner appealed from the sentence. (Notice of Appeal, ECF No. 149.) On appeal, Petitioner challenged whether his prior convictions qualified as controlled substance offenses. *Orsini*, 907 F.3d at 119. The First Circuit noted the claim was "dubious" on the merits, but determined that Petitioner had waived his right to challenge the career offender determination by intentionally relinquishing or abandoning the issue. *Id.* at 119 – 121 (concluding that at sentencing "appellant's counsel repeatedly and unequivocally affirmed that the appellant should be sentenced as a career offender, and the appellant himself reprised this affirmation," which amounted to "a deliberate stratagem designed to give the appellant a distinct tactical advantage").

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence

"is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"*[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that

"procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697.

If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### B. Claims and Analysis

#### 1. Mens Rea Element

Petitioner argues the Government failed to prove he had the requisite mens rea[1] under 21 U.S.C. § 841 because the indictment did not specify the controlled substances with enough precision, including the specific salt, isomer, or chemical structures.

The Constitution protects a right "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [a defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see also*, *Apprendi v. New Jersey*, 530 U.S. 466, 501 (2000). "A defendant who enters . . . a [guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). "[I]f a defendant's guilty plea is not voluntary

---

[1] The term is latin for "guilty mind," is also termed the "mental element" or "criminal intent," and refers to "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime." *Mens Rea*, Black's Law Dictionary (11th ed. 2019).

and knowing, it has been obtained in violation of due process and is therefore void." *Id.* If valid, however:

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989); *see also*, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The Court determined there was a factual basis for Petitioner's guilty plea and that Petitioner knowingly and voluntarily entered the plea. Petitioner has not presented any evidence to suggest the plea was not knowing and voluntary, nor has he raised any other basis for a collateral attack of the guilty plea. (Change of Plea Hearing Transcript at 14, ECF No. 166.) In fact, in his reply memorandum, Petitioner expressly denies that he is challenging the knowing and voluntary nature of his guilty plea. (Reply at 11, ECF No. 180.) Furthermore, Petitioner challenges the government's evidence, the specificity of the indictment, and the performance of counsel, but he does not argue that he did not know that the items he possessed and conspired to distribute were controlled substances. Petitioner, having knowingly and intentionally admitted in court that the evidence satisfied all the elements of the crime, cannot now contest the sufficiency of the evidence the Government was prepared to present.

Even if Petitioner could mount such a challenge after the guilty plea, and even if there were merit to his argument about the salts, isomers, and chemical structures of certain

7

substances, the salts and isomers language of the statute is found only in the subsection of the penalties provision addressing forms of cocaine, *see* 21 U.S.C. § 841(b)(1)(A)(ii)(I) – (IV) and methamphetamine. *See id.* § 841(b)(1)(A)(viii). His argument, therefore, even if meritorious, would only address the alleged cocaine distribution, and would not undermine the evidence regarding the heroin and fentanyl distribution, which alone are sufficient to support the judgment.

In short, Petitioner cites no authority to support his argument that an indictment must include the level of specificity he maintains is required, or that the Government must prove that level of specificity to establish Petitioner's guilt. In addition, to the extent Petitioner contends that his counsel was ineffective because she did not properly advise him on mens rea or argue that a greater specificity was required, Petitioner's argument lacks a factual or legal basis.

### 2. Maximum Term of Imprisonment

Petitioner contends that his 188-month term of imprisonment exceeds the statutory maximum for his offense of conviction, which he contends is ten years. Under the governing statute, however, distribution of 100 grams or more of a mixture or substance containing a detectable amount of heroin results in "a term of imprisonment which may not be less than 5 years and not more than 40 years . . . ." 21 U.S.C. § 841(b)(1)(B)(i). Even without considering the unstated quantity of cocaine and fentanyl, therefore, Petitioner's admission to conspiring to distribute 100 grams or more of heroin supports the 188-month sentence.

### 3. Chemical Analysis

Petitioner challenges the effectiveness of his counsel for not obtaining a chemical analysis of the substances the agents seized. The record lacks any evidence to suggest that the chemical analysis would have generated evidence that would have undermined the Government's ability to establish Petitioner's guilt. Petitioner, therefore, cannot demonstrate that his counsel's performance was substandard or that he was prejudiced as required by *Strickland*.

### 4. Consideration of 18 U.S.C. § 3553(a) Factors

Petitioner questions whether the Court would have imposed the 188-month term of imprisonment if the Court had considered all the factors under 18 U.S.C. § 3553(a). Petitioner's argument lacks merit because the record establishes that both the prosecutor and Petitioner's attorney made arguments based on the § 3553(a) factors and the Court considered the § 3553(a) factors as required. (Sentencing Transcript at 4, 19 – 27, 30, 32.)

### 5. Victim's Conduct

Petitioner asserts that he was deprived of effective assistance of counsel because his attorney did not argue for a four-level downward departure based on the victim's conduct. The sentencing guidelines contemplate a downward departure "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior. . . ." USSG § 5K2.10. Because there are no identifiable victims for the offenses, Petitioner's underlying argument is without merit and his counsel's performance was not substandard.

### 6. Supervised Release

Petitioner challenges the five-year term of supervised release imposed by the Court. The term of supervised release was consistent with the statutory minimum and the sentencing guidelines maximum. *See* 21 U.S.C. § 841(b)(1)(B) (mandating "a term of supervised release of at least 4 years" for violations involving 100 grams or more of a mixture or substance containing a detectable amount of heroin); U.S.S.G. § 5D1.2(A)(1) (specifying a maximum supervised release term of "five years for a defendant convicted of a Class A or B felony"); 18 U.S.C. § 3559(a)(2) (classifying any offense with a maximum authorized term of imprisonment of "twenty-five years or more, as a Class B felony"); 21 U.S.C. § 841(b)(1)(B)(i) (authorizing a maximum sentence of "not more than 40 years" imprisonment for distribution of 100 grams or more of a mixture or substance containing a detectable amount of heroin). Petitioner has presented no evidence, nor has he persuasively argued, that the term of supervised release imposed by the Court was unsupported by the facts or the law.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 7th day of August, 2019.